IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MY IV SPA LLC, GRAVATUS HOLDINGS LLC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:18-cv-01672-DCN |
| vs. | ) ) ) | **ORDER** |
| HYDRATION STATION USA FRANCHISE SYSTEM LLC, KEITH MCDERMOTT, | ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter comes before the court on My IV Spa LLC ("My IV Spa") and Gravatus Holdings LLC's ("Gravatus") (together, "plaintiffs") motion to remand, ECF No. 7. For the reasons set forth below, the court grants the motion to remand.

## I. BACKGROUND

This matter arises out of plaintiffs' claim that Hydration Station USA Franchise System LLC ("Hydration Station") and Keith McDermott ("McDermott") (together, "defendants") have not abided by the terms of an agreement decided upon during arbitration proceedings. Plaintiffs and defendants had previously entered into an agreement to open a Hydration Station franchise in Charleston, South Carolina. According to plaintiffs, on December 22, 2016, plaintiffs filed a demand for arbitration with the American Arbitration Association. On or about April 11, 2018, plaintiffs and defendants reached an agreement regarding a resolution of the arbitration proceedings ("the Agreement"). Plaintiffs claim that defendants have failed to comply with the terms of the Agreement by, among other things, contending that the Agreement requires that

1

Gravatus sell back its 10% ownership interest in Hydration Station. Plaintiffs have brought causes of action for breach of contract and declaratory judgment.

Defendants removed the action on June 18, 2018. ECF No 1. On June 22, 2018, plaintiffs filed the motion to remand. ECF No. 7. On July 5, 2018, defendants filed their response. ECF No. 12. On July 9, 2018, plaintiffs filed their reply. ECF No. 14. The motion has been fully briefed and is ripe for the court's review.

## II.  STANDARD

As the party seeking to invoke the court's jurisdiction, defendants have the burden of proving jurisdiction upon motion to remand. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (citing Mulcahy v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)); see Caterpillar Inc. v. Lewis, 519 U.S. 61, 73 (1996) (stating that the party seeking to remove a case from state court to federal court bears the burden of demonstrating that jurisdiction is proper at the time the petition for removal is filed). In deciding a motion to remand, the federal court should construe removal jurisdiction strictly in favor of state court jurisdiction. Id. "If federal jurisdiction is doubtful, a remand is necessary." Mulcahy, 29 F.3d at 151 (citations omitted), Pohto v. Allstate Ins. Co., No. 10-2654, 2011 WL 2670000, at *1 (D.S.C. July 7, 2011) ("Because federal courts are forums of limited jurisdiction, any doubt as to whether a case belongs in federal or state court should be resolved in favor of state court.").

## III.  DISCUSSION

Defendants removed this case based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, 1446. Federal district courts have jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between .

. . citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). "Diversity of citizenship is assessed at the time the action is filed." Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991); see also Martinez v. Duke Energy Corp., 130 F. App'x 629, 634 (4th Cir. 2005) ("It is well settled that, in order to maintain an action in federal district court based upon diversity jurisdiction, complete diversity between the plaintiffs and the defendants must exist at the time the complaint is filed."). "A limited liability company organized under the laws of a state is not a corporation . . . [but rather] is an unincorporated association, akin to a partnership for diversity purposes, whose citizenship is that of its members." Gen. Tech. Applications, Inc. v. Exro Ltd., 388 F.3d 114, 121 (4th Cir. 2004).

Plaintiffs are both LLCs organized under the laws of South Carolina with all members being citizens of South Carolina. Defendant McDermott is a citizen of Georgia. Defendant Hydration Station is an LLC organized under the laws of Georgia, with the majority of its members being citizens of states other than South Carolina. Plaintiff Gravatus alleges that it holds a 10% interest in defendant Hydration Station and is thus also a member of the LLC. Because Hydration Station is a citizen of any state of which its members are citizens, Gravatus's membership would defeat complete diversity—plaintiff Gravatus is a citizen of South Carolina, and Gravatus's membership in Hydration Station would render defendant Hydration Station a citizen of South Carolina. If Gravatus is not still a member of Hydration Station, then there is complete diversity and removal is proper.

Defendants acknowledge that on July 20, 2015, Gravatus acquired a 10% membership interest in Hydration Station in conjunction with the franchising agreement.

3

However, defendants claim that Gravatus sold its interest back to Hydration Station in return for $250,000. Defendants offer to the court evidence of communication between the parties memorializing this agreement. However, as plaintiffs point out, this evidence fails to meet the requirements of the Operating Agreement that had previously been agreed to by both parties.

Plaintiffs quote section 10.08(a) of the operating agreement, which states that "any Member . . . may make an offer to purchase one hundred percent of the Membership Interest(s) of all other Members by a written offer to such Member(s). The written offer shall state the purchase price . . . and the terms of such purchase . . . ." ECF No. 7-2, First Amendment to Operating Agreement. However, plaintiffs fail to address section 10.03, Conditions of Transfer and Assignment. Section 10.03 requires that "[a] transferee of a Member Interest shall become a Member and/or Profit Interest Owner, as appropriate, only if," among other things, "the transferor . . . [has] executed a written instrument of transfer of such ownership interest in form and substance satisfactory to the voting Members." ECF No. 14-1, Original Operating Agreement, Section 10.03(a).[1] The transferor must also have executed a written agreement with the transferee that holds "the Company and the other Members and Profit Interest Owners harmless from and against any loss or liability arising out of the transfer." Id. § 10.03(c). There is no evidence that Gravatus, as the transferor, executed any written instrument of transfer of the ownership of its 10% membership interest. Likewise, there is no evidence that Gravatus and

---

[1] The First Amendment to the Operating Agreement did not alter Section 10.03 of the Original Operating Agreement. Thus, the court relies on both the Original Operating Agreement and the First Amendment.

Hydration Station, the transferee, ever executed a written agreement indemnifying the company. Gravatus avers that it never executed these documents; plaintiffs have not contradicted Gravatus' arguments about the requirements of section 10.03 but merely points to the evidence of the email communications between the parties agreeing to the sale of the 10% membership interest.

The court's concern here is not with determining whether Gravatus or Hydration Station acted appropriately in regards to this alleged sale of the 10% interest, or whether the Agreement ending arbitration did or should have required this sale. Rather, the court's focus is on whether Gravatus was a member of Hydration Station at the time plaintiffs filed the complaint. More specifically, the question before the court is whether the parties executed a written instrument of transfer pursuant to section 10.03 of the Operating Agreement, sometime between the end of arbitration on April 11, 2018 and the filing of this suit in state court on May 18, 2018. As no evidence of this instrument has been presented to the court, the court finds that Gravatus had not actually transferred its membership interest back to Hydration Station, because the procedures of the Operating Agreement were not followed. Thus, Gravatus was a member of Hydration Station when the suit was filed. Gravatus's membership rendered Hydration Station a citizen of South Carolina when this suit was filed, defeating complete diversity.

Plaintiffs argue that this issue which determines Hydration Station's citizenship is so intertwined with the merits of this action that it should remain in federal court. Generally, "where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a [f]ederal cause of action, the proper course of action for the district court ... is to find that jurisdiction exists and to deal with the objection as a direct attack

5

on the merits of the plaintiff's case." CNA v. United States, 535 F.3d 132, 143 (3d Cir. 2008), as amended (Sept. 29, 2008). The "merits" of the case here revolve around whether the sale of Gravatus's 10% ownership interest was or should have been a part of the Agreement that ended the August 11, 2018 arbitration. By contrast, the question that the court must now consider in order to determine citizenship for the purpose of diversity jurisdiction is whether Hydration Station was a citizen of South Carolina at the time the complaint was filed. This can be determined based on the evidence before the court without the court delving into the merits of the complaint.

Even simply considering the evidence submitted by Hydration Station, the party that argues that Gravatus was not a member when the suit was filed, the court can determine that Gravatus had not properly transferred its ownership interest. Hydration Station argues that the transfer of the interest was completed upon the email communication between the parties and Hydration Station's transfer of $250,000 to Gravatus for the 10% ownership interest. However, based on the terms of the Operating Agreement, the court can determine that Gravatus had not properly transferred its shares and was still a member of Hydration Station. This determination leaves to the state court the question of whether the Agreement concluding the arbitration proceedings required that Gravatus sell its 10% interest back to Hydration Station. For the motion currently before this court, the court can determine that Gravatus had not properly transferred its interest to Hydration Station.

Because one of Hydration Station's members was a South Carolina resident when this action was commenced, Hydration Station was a South Carolina citizen as well.

This creates a plaintiff and a defendant who were both citizens of South Carolina, defeating complete diversity.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to remand.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**August 15, 2018
Charleston, South Carolina**